**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------- X
UNITED STATES OF AMERICA,                    :
                                             :
     - v. -                                  :
                                             :     **COMPLAINT**
                                             :     **M-08-1766**
JOSEPH SHERESHEVSKY,                         :
                                             :
                    Defendant**.**           :
                                             :
-------------------------------------------------------------- X

<u>**MEMORANDUM IN SUPPORT OF DEFENDANT JOSEPH**</u>

<u>**SHERESHEVSKY'S MOTION FOR BAIL PENDING TRIAL**</u>

<u>**INTRODUCTION**</u>

Defendant Joseph Shereshevsky is presently being held without bail, charged with a single count of conspiracy to violate Section 10 (b) and Rule 10b-5 of the Securities Exchange Act of 1934, as amended.  Because his pretrial detention by the Government is clearly violative of his rights under the Bail Reform Act of 1984, 18 USC 3142, et seq (hereinafter the "Act"), and its controlling case law, he petitions the Court herein to compel the Government to prove in an adversarial proceeding, by clear and convincing evidence, that his continuing incarceration is authorized and warranted by the stringent criteria of the Act, as more fully set forth below, or otherwise order his release on bail pending trial on terms and conditions satisfactory to the Court.  For the reasons discussed below, including an analysis of the governing statutory and legal authority, the Government cannot meet its formidable burden of proof.  On the contrary, as will be demonstrated to the Court's satisfaction, Mr. Shereshevsky's family and community ties firmly establish there *are* conditions that reasonably assure Mr. Shereshevsky's continuing attendance, and participation in ongoing proceedings, public safety, and adherence to bail conditions.

In August 2008, a Complaint and Affidavit in Support of an Arrest Warrant was issued in this District against Joseph Shereshevsky. The underlying Complaint's sole count, as referenced above, alleges Mr. Shereshevsky conspired to commit securities fraud. Accordingly, the pending charge does not contemplate any of the aggravated violations expressly set forth in 3142(f)(10)(A)(E) of the Act which constitute presumptively non-bailable offenses. As detailed *infra*, many notorious crime figures facing significantly graver charges, including attempted murder, murder conspiracy, extortion, gun possession, forced labor, and harboring illegal aliens, have won bail in the Southern and Eastern Districts. While the non-violent allegations in the aforementioned Complaint against Mr. Shereshevsky, if proven, are clearly unlawful, none of the charges in the complaint are for murder, murder conspiracy, extortion, gun possession, forced labor, or for harboring illegal aliens.

## SUMMARY OF THE COMPLAINT

The allegations in the Complaint contend that Mr. Shereshevsky defrauded investors by co-mingling(sic) funds from certain investment entities. The Court should be aware that Mr. Shereshevsky's investors were "*sophisticated investors*", which entered into limited liability operating agreements pursuant to Private Placement Memorandums, which expressly granted in their "Use of Proceeds" Section, the Managers wide discretion in connection with the use of the investment funds.

The substantive integrity of the Government's underlying charge herein, conspiracy to violate section 10(b) and Rule 10b-5 of the Securities Exchange Act of 1934, which serves as the basis of Mr. Shereshevsky's pre-conviction detention, is, on its face, legally infirmed. These securities antifraud provisions are expressly confined to alleged fraud "…in connection with the

purchase and sale of any security." The Government's Complaint, however, relies on allegations of misconduct after the consummation of the subject private placement funding, citing misuse of proceeds, and commingling of funds, in potential violation of specific limited liability company operating agreements. (Complaint para: 13, 24, 30-31). Such conduct potentially violates the respective states' Limited Liability Company enabling statutes, and otherwise may form the basis of actionable breach of contract, and other private, state civil claims, however, such conduct does not represent, for purposes of 18 U.S.C. Sec. 371 offenses, "…against the United States."

## MR. SHERESHEVSKY'S PROPOSED BAIL PACKAGE

To ensure compliance with his release conditions, including his appearance in this Court, as required, Mr. Shereshevsky proposes to post a $5,000,000.00 bond, secured by the equity of (3) properties totaling at least $900,000.00.[1]

1) Alan Verschleisser is putting up two properties on behalf of his son-in-law, his commercial property located at 2501 Baker Street Baltimore, Maryland 21216 (See Exhibit 1, deed) and two his primary residence located at 3200 W. Strathmore Ave, Baltimore, Maryland (See Exhibit 2, deed). Both properties are free from any encumbrances; and

2) Lisa Handke, Mr. Shereshevsky's gardener is putting up her home located at 909 Elkin Street, Norfolk, Virginia. (See Exhibit 3, mortgage).

Also, on behalf of Mr. Shereshevsky, there are ten (10) economically qualified individuals amongst his family and friends are willing to sign a $5,000,000.00 surety bond as a testament to their belief that he is not a danger to the community or a risk of flight.

---

[1] Upon information and belief Mr. Shereshevsky's co-defendant Mr. Byres was granted bail.

3

In addition, Mr. Shereshevsky consents to home confinement with electronic monitoring, with permission to leave for religious observation and events, medical visits, and counsel visits.[2] The willingness of his family and friends to forfeit their properties and life savings should Mr. Shereshevsky violate his bail conditions, cannot be deemed insignificant, and holds a high degree of moral suasion. *See, e.g., United States v. Gigante*, 85 F.3d 83 (2d Cir. 1996) (court may forfeit defendant's bail upon violation determination). *See also United States v. Vaccaro*, 51 F.3d 189 (9th Cir. 1995); *United States v. Terrell*, 983 F.2d 653 (5th Cir. 1993); *United States v. Santiago*, 826 F.2d 499 (7th Cir. 1987); *United States v. Gambino*, 809 F. Supp. 1048 (S.D.N.Y. 1992) (Leisure, J.), *aff'd*, 17 F.3d 572 (2d Cir. 1994); *United States v. Patriarca*, 948 F.2d 789, 793 (1st Cir. 1991) (we see no reason why an agreement to forfeit bail should not be valid, it adds considerably to the incentive value of the forfeiture condition).

## ARGUMENT

## MR. SHERESHEVSKY IS ENTITLED TO BAIL PENDING TRIAL

### I. THE APPLICABLE LAW

As the Government will concede, the charges in this case do not trigger a statutory presumption of detention under the Bail Reform Act (BRA). *See* 18 U.S.C. 3142(e). Rather, the Complaint before the Court does not allege any crime[s] of violence. Therefore, there is no doubt that the non-violent charges alleged in the Complaint are bailable offenses. Accordingly, Mr. Shereshevsky stands before this Court as both presumptively innocent, *see* 18 U.S.C. 3142(j), **and** presumptively eligible for pretrial release. *See, e.g., United States v. Scarpa*, 815 F. Supp. 88, 91

---

[2] We are awaiting a Pre-trial services report.

(E.D.N.Y. 1993) (pretrial detention has been and should remain the **exceptional practice**) (emphasis supplied); *United States v. Berrios-Berrios*, 791 F.2d 246, 250 (2d Cir. 1986) (pretrial detention is a drastic measure, narrowly reserved for extreme case[s]).

To rebut the latter presumption, the Government must prove that there are no conditions which will reasonably assure Mr. Shereshevsky's appearance and the safety of the community. *See* 18 U.S.C. 3142(f). With respect to community safety, the Government's burden is one of clear and convincing evidence. *Id.*; *see, e.g., United States v. Ferranti*, 66 F.3d 540, 542 (2d Cir. 1995); *United States v. Orena*, 986 F.2d 628, 632 (2d Cir. 1993).

Here, the Government cannot meet either statutory criterion. *A fortiori*, it cannot reverse the applicable presumption in favor of bail, prompting Mr. Shereshevsky's swift release. *See, e.g., United States v. Salerno*, 481 U.S. 739, 755 (1987) (describing pretrial detention as a carefully limited exception); *United States v. Friedman*, 837 F.2d 48, 49 (2d Cir. 1988) (pretrial detention is only appropriate in strictly limited circumstances).

## II.    MR. SHERESHEVSKY POSES NO RISK OF FLIGHT

Mr. Shereshevsky poses no risk of flight, as evidenced by the letters of support annexed to our moving papers and excerpted *infra*.[3] Mr. Shereshevsky has substantial, if not overwhelming, family and community ties. *See* 18 U.S.C. 3142(g)(3)(A). Mr. Shereshevsky has a significant bond with his children, wife, mother, siblings, specifically his quadriplegic brother, and community. Bail is essential for Mr. Shereshevsky to maintain some semblance of normalcy in his life and help counsel prepare his defense pending trial.[4]

---

[3] Mr. Shereshevsky's passport is in the possession of the United States Government.
[4] As the Court is aware, Mr. Shereshevsky was charged with the non-violent offense of conspiracy to commit bank fraud in 1993, plead guilty to that offense in 1994 and was sentenced in 2003. He never once violated his conditions of bail,

Mr. Shereshevsky's enduring and strong connection to the community indicate that there is no reason to believe that he will not appear before this Court when required. The absence of any genuine flight risk weighs heavily in favor of bail pending trial.

Moreover, assuming *arguendo,* as the Government sets forth, that Mr. Shereshevsky does indeed pose a flight risk, the law, in spite of this supposition, will unfalteringly favor bail release, in that the Government has a dual burden in seeking pre-trial detention. *United States v. Sabhnani*, 493 F.3d 63, 75 (2d Cir. 2007). Even if the Government establishes, by a preponderance of the evidence, that the defendant presents a flight risk, the Government must demonstrate, by a preponderance of the evidence, that no conditions could be imposed on the defendant that would reasonably assure his attendance in court. *Id*.

Despite the violent nature of the forced labor and harboring illegal aliens charges against the defendants in *Sabhnani*, which are significantly more abhorrent and inhumane than the charges alleged in Mr. Shereshevsky's aforementioned Complaint, the *Sabhnani* court vacated the district court's order of pretrial detention and the case was remanded to permit the parties to provide assurances and finalize bail release orders to be executed by the district court. *United States v. Sabhnani*, 493 F.3d 63, 79 (2d Cir. 2007). The principles extended in *Sabhnani* are applicable here and we contend that an order setting conditions of release, including, but not necessarily limited to, a personal recognizance bond, home detention, electronic monitoring of Mr. Shereshevsky's communications, and monitored travel for religious services and/or medical appointments would significantly mitigate flight risk. The Government has not explored these constraints and therefore

---

attended every single court appearance, and had an unblemished record while on twenty-four months of supervised release. This behavior is a strong indication that Mr. Shereshevsky is a candidate for bail pending indictment and trial in the abovementioned case.

has not demonstrated by a preponderance of the evidence that no conditions could be imposed that would sufficiently ensure Mr. Shereshevsky's attendance at trial, thus the Government has failed to support denying Mr. Shereshevsky bail.

### III.    MR. SHERESHEVSKY POSES NO DANGER TO COMMUNITY SAFETY

As the Second Circuit recently reaffirmed, [d]etention determinations must be made individually, *Patriarca*, 948 F.2d at 794-95 (citation and internal quotes omitted), on a case-by-case assessment of danger. *See United States v. Bellomo*, 944 F.Supp. 1160, 1163 (S.D.N.Y. 1996) at 1166; *accord Ciccone*, 312 F.3d at 543 (requiring a fact-intensive analysis of the quality and quantity of the evidence in each particular bail hearing).

Here, an individualized assessment of Mr. Shereshevsky's situation compels the conclusion that he is not a current threat to public safety, and is entitled to bail on appropriate conditions.

#### A.    Mr. Shereshevsky's Daily Routine

Mr. Shereshevsky's daily routine consists of observing his faith, which includes praying multiple times of the day as well as taking care of his two infant children Chaim and Pesha, ages six and five respectively.

#### B.    Mr. Shereshevsky's Medical Condition

Mr. Shereshevsky suffers from a severe heart condition that has required him to have had four (4) stents implanted.  His health condition requires that he be monitored by competent medical specialists.

7

C.    **More Severely Situated Defendants are Routinely Bailed in the Southern and Eastern Districts**

Scores of defendants with far more egregious and violent charges against them such as murder, attempted murder, murder conspiracy, gun possession, extortion, kidnapping, and other violent crimes, to name a few, have regularly received bail in the Southern and Eastern Districts of New York.  In comparison, Mr. Shereshevsky's alleged Complaint is for a non-violent crime of conspiracy to commit securities fraud.

By way of example, we respectfully refer the Court to the following: *United States v. Gigante*, 85 F.3d at 84 (alleged boss of Genovese organized crime family); *United States v. Spero*, 99 Cr. 520 (E.D.N.Y.) (Korman, J.) (alleged *Consigliere* of Bonanno Crime Family, charged with murder and other violence); *United States v. Bellomo*, 96 Cr. 430 (S.D.N.Y.) (Kaplan, J.) (alleged Genovese Acting Underboss Mickey Generoso, charged with murder conspiracy); *United States v. Fama*, 95 Cr. 840 (S.D.N.Y.) (Owen, J.) (reputed soldier charged with heroin distribution, kidnapping and murder); *United States v. Gregory Scarpa, Jr.*, 94 Cr. 1119 (E.D.N.Y.) (Raggi, J.) (accused participant in bloody Colombo Family war); *United States v. Orena*, 93 Cr. 1366 (E.D.N.Y.) (Korman, J.) (reputed soldier for an organized crime family and the crime boss' son, charged with murder conspiracy and weapons possession); *United States v. Failla*, 93 Cr. 294 (E.D.N.Y.) (Sifton, J.) (multiple high-ranking members of Gambino Family accused, among other charges, of killing a Government witness); *United States v. Conti*, 93 Cr. 053 (E.D.N.Y.) (Glasser, J.) (organized crime defendant charged with murder and murder conspiracy); *United States v. Russo*, 92 Cr. 529 (S.D.N.Y.) (Cedarbaum, J.) (alleged mafia captain charged with murder and other violent crimes); *United States v. Persico*, 92 Cr. 351 (E.D.N.Y.) (Sifton, J.) (alleged mafia captain charged with murder conspiracy in connection with internal Colombo war); *United States v. Rosenfeld*, 90

8

Cr. 755 (S.D.N.Y.) (Sweet, J.) (defendant released on bail despite charges of threatening one cooperator with a gun and killing another); *cf.*, *e.g., United States v. Fiumara*, 02 Cr. 317 (D.N.J. 2002) (reputed head of Genovese Family's New Jersey faction, whose parole was revoked for four (4) alleged murders).

In consideration of the aforementioned defendants' obtainment of bail, with crimes ranging from murder, murder conspiracy, killing Government witnesses, heroin distribution and kidnapping, there rests no principled basis for withholding bail from Mr. Shereshevsky for alleged conspiracy to commit securities fraud.

## IV.   ADDITIONAL CONSIDERATIONS STATUTORY, EQUITABLE AND PRACTICAL ARGUE STRONGLY FOR MR. SHERESHEVSKY'S RELEASE

### A.   Prolonged Pretrial Detention will Compromise Mr. Shereshevsky's Ability to Defend Himself

Bail is further imperative in that it permits Mr. Shereshevsky to adequately assist counsel in preparing his defense. We remark that the Government allegedly has a vast number of Mr. Shereshevsky's documents and in these circumstances, Mr. Shereshevsky's presence is essential in assisting to decipher and accurately explain such documents, if they do in fact exist. Indeed, without his aid, the ability to present an effective defense, or even make competent suppression motions, may well be seriously impaired.

Furthermore, since Mr. Shereshevsky has not yet been formally indicted, and it is unlikely that his case will be tried any earlier then later next year, he consequently faces an exceedingly protracted pretrial detention. These factors, proper considerations in considering the extension of bail, are squarely in favor of release. *See, e.g., Orena*, 986 F.2d at 630-31 (collecting cases); *United*

*States v. Frisone*, 795 F.2d 1 (2d Cir. 1986); *United States v. Gallo*, 653 F.Supp. 320, 336-39 (E.D.N.Y. 1986); *Scarpa*, 815 F.Supp. at 91.

**B. <u>Letters of Support Attest to Mr. Shereshevsky's Good Character and Strong Family and Community Ties</u>**

The Court will hear from Mr. Shereshevsky's family, friend, and community; the people who *truly* know his character and propensities. Accompanying this submission are letters of support that vividly illustrate his upstanding moral character and solid family [and] strong community ties. 18 U.S.C. 3142 (g)(3)(A). These letters depict a loving and devoted husband, father, son, brother, uncle, as well as, a generous, charitable neighbor and community member. The assistance, friendship, and guidance that Mr. Shereshevsky has given his family and community over the years are now reciprocated by the vast array of people proffering properties and letters of support with this application.

As the letters verify, Mr. Shereshevsky is a loving husband to Elka, a dutiful son, a devoted father of seven children, in particular his two minor children, Chaim and Pesha, ages six and five respectively, a loving grandfather to his four infant grandchildren, a dedicated brother to his siblings, specifically his quadrapalegic brother, a supportive uncle to his nieces and nephews, as well as a cherished member of his community for his compassion warmth and kindness. As the following excerpts reveal, the letters accompanying this application underscore the love and respect shared between Mr. Shereshevsky and the members of his community. In sum, after years of intimate acquaintance with Mr. Shereshevsky, the community has shown their universal trust in him.

More specifically:

Mr. Shereshevsky's sister, Hadassah Shereshevsky Horowitz, writes on behalf of her brother, Yoseph, with whom she's known her whole life:

"Yoseph, as we call him, is the 6th of seven children. Even though he is of the younger set, he always took the responsibility of supporting our family in every way. Our father passed away 20-years ago. We have a quadriplegic brother, a victim of a fatal car accident, since June 28, 1971. Our brother has been in this worsening condition for all this time. He has been taken care of by the family for the last 37-years. He cannot speak or move a limb, yet he is cognizant of all that is going on. With the grace of G-d, the love of family and the monetary support of our younger brother, Yoseph, he has been able to survive all these years in relative comfort in the house and not in a public facility."
(See Exhibit 4)

Isaac Hersh writes on behalf of Joseph:

"Around four a clock I was abruptly woken from my sleep and too large men that were hired by my father put me in handcuffs and threw me into the back of their car. They got me on a plane to the island of Jamaica and transported me to an inhumane facility where malnutrition, child abuse, and mistreatment was practiced on a day to day basis. I spent the next nine and a half months there in a living Hell. Everyone in the community tried everything possible to get me out but to no avail. Finally a wonderful group of men came up with an emergency plan on getting me out but there was one problem and that was it required flying down to Jamaica on a private jet which costs thousands of dollars and which they had no funding for.

Joseph Shereshevsky had heard about what was going on with my situation and despite the fact that he never met me, he right away went ahead and paid for the jet out of his own pocket. The men flew down with the private jet to Jamaica and were successfully able to bring me home. If not for Joseph I would have still been in Hell I owe my life to him."
(See Exhibit 5)

Mr. Shereshevsky's sister Nechomoh Orenstien writes:

That her brother is the "man" of the family and gives examples of how Joseph took care of their father when he was sick in the hospital and at home after an operation. Also, how Joseph, cares for their elderly mother and their quadriplegic brother.
(See Exhibit 6)

Rabbi Mordechai Herskowitz of the Beth Medrash Govoha of the Lakewood, New Jersey community states in pertinent part:

"It is now approximately two and a half years since I met Mr. Joseph Shereshevsky. Ever since the first time we were introduced, I have been very impressed by his fine character. Over this period, he has been very helpful to our entire community, and me in particular, with the advice and guidance he has shared."
(See Exhibit 7)

11

Rabbi Isaac Entin, the Principal of Phoenix Hebrew Academy, who has known Joseph since 2002, states:

> "I found Mr. Shereshevsky to be a warm, kind caring man, who welcomed me to the community and his home as if I were family."
> (See Exhibit 8)

Tova Seligson has lived in Norfolk for one year and writes on behalf of Joseph:

> "…I have directly felt and benefited from the kindness of the Shereshevsky's. Their house is a place of warmth and a place that always has open doors for those in need." Tova goes on to describe how Joseph interacts with his children and grandchildren by helping them with their homework.
> (See Exhibit 9)

Rabbi Alexander Haber who has known Joseph since 2001 writes on his behalf:

> "…I have taught his children in both formal and informal settings. His home has always been open to my family and we have spent many inspiring and productive hours together. I know Mr. Shereshevsky as a loving husband, devoted father and a thoughtful and active member of our community."
> (See Exhibit 10)

Rabbi Aryeh Gibber has known Joseph for approximately seven years and states in pertinent part:

> "Perhaps most noteworthy is how Mr. Shereshevsky has established himself and his home as the destination of choice for those in need be they religious schools and institutions, individuals struggling with personal issues or even a local public school band; all of these and more have found solace and support in the embrace of the Shereshevsky home."
> (See Exhibit 11)

Chaim and Aviva Harpaz are teachers and have known Joseph for two years:

> "All of our interaction with him have been pleasant and positive. Yossi is always looking to help others. He is knowledgeable and loves to teach children and adults."
> (See Exhibit 12)

Miriam Lowenbraun states:

12

"I have known Joseph Shereshevsky for approximately eight years. I have always found him to be honest and truthful with me and upright in all our personal dealings. I would trust him with my life."
(See Exhibit 13)

Rabbi Yitzchok Lowenbraun, who has known Joseph since 2000, states:

"I have always been impressed with his deep commitment and concern for the general welfare of the community and his willingness to lend a helping hand whenever needed. Joseph is a devoted husband and father, and he has been an outstandingly good and loyal friend."
(See Exhibit 14)

Moshe Rubanowitz describes when he and his family moved into Norfolk and they were delayed into moving in their home:

"Mr. Shereshevsky heard that our move into our new home had been delayed. He therefore offered us a place to live until we were able to settle down. During our two month stay there, he repeatedly told us to stay there as long as we needed. Mr. Shereshevsky has a beautiful relationship with his beautiful children."
(See Exhibit 15)

Barney R. Siegel, who has known Joseph for nine years, three of those years working with Joseph as a volunteer in Norfolk, states:

"He has been a diligent participant in community projects, be it help for a local public school or working with a local private school or other endeavors."
(See Exhibit 16)

Patricia and Jerry Mothersheads write that Joseph and his wife Elka took a personal interest in an elderly couple and during a particular hot summer, Joseph checked on that couple frequently out of concern for their health and well being.
(See Exhibit 17)

Nilli Verschleisser, Joseph's sister-in-law for a year and a half, writes:

"In this time I have come to recognize Joseph as a man who values his rich moral tradition…" "…Joseph's home is most certainly open to anyone."
(See Exhibit 18)

Sid Bridge has known Joseph for over seven years and states in pertinent part:

"Speaking as a former employee of Pure Africa Minerals, although I did not work on the financial end, I saw a man who worked tirelessly to ensure the safety of his investors' money in some fairly risky investments.  Joseph Shereshevsky is a kind man, a good father and a friend."
(See Exhibit 19)

Trudy Dayanim writes:

"I met Mr. Shereshevsky when he first came to Norfolk at the Kosher Place and we have shared many religious services at B'nai Israel.  From my observation, I see Mr. Shereshevsky as a caring, loving father of beautiful children and a loving husband and a caring generous supporter of his community.  It is such a pleasure to watch him teach his little son how to pray and behave properly and respectful in the synagogue, I see that he is friendly and kind to everyone around him."
(See Exhibit 20)

Yitzchok & Tzipporah Levovitz write on behalf of Joseph:

"As family and friends of Joseph and his extended family we know him as a respectable gentleman who sought out every opportunity in helping those that he knew and those who were strangers and were in a predicament and needed his help."
(See Exhibit 21)

Leah Schwartz, a friend of Joseph's for ten years, recalls:

"When our air conditioner broke in the middle of a heat wave a few years ago, Mr. Shereshevsky was the person we turned to who would take us in with all of our kids until repairs could be made.  Our children look up to him…"
(See Exhibit 22)

Andrea Meltzer, who has known Joseph for many years, states:

"Joseph has been very gracious and respectful to my mother who is elderly and has always been there for me particularly during several serious medical situations."
(See Exhibit 23)

Samuel Leibovici, MD has known Mr. Shereshevsky for two years and writes to the court on his behalf:

"I have had the pleasure of eating at his home, met his family on numerous occasions, and found him to be a pleasant, honorable, unassuming, and charitable person.  He is a good family man..."
(See Exhibit 24)

14

Michael and Chana Taragin, who have known Mr. Shereshevsky for eight years, write:

> "He is a kind, compassionate, and caring individual.  We are privileged to count him and his family among our friends."
> (See Exhibit 25)

Rene Gelb, Joseph's sister-in-law, who has known him for about eight years, writes:

> "Yossi is a family oriented father and husband.  He is wonderful to my sister, his wife, for which I am most grateful."
> (See Exhibit 26)

Yehoshua Shereshevsky is twenty six years of age and along with his wife and daughter, states how much of a family man Joseph is with his mother, brother, and his children.
> (See Exhibit 27)

Yehuda, Donna, Sion, and Nachum Mizachi wrote a group letter stating in pertinent part:

> "This letter is to request the court to release Mr. Shereshevsky on bond. We, here at Little Israel Kosher Food Store, have known Mr. Shereshevsky for three years and during that period of time (period of) we have known him to be an honest and trustworthy person who has shown kindness to all and has offered suggestions and help (to in addition) to his continued support and patronage. Mr. Shereshevsky has opened his home to many (of here) by including us in his holiday celebrations."
> (See Exhibit 28)

Mr. Shereshevsky's sister-in-law Chana Shereshevsky states on behalf of her brother:

> "I was to observe him as a husband and a father who would regularly cook dinner and spend hours doing homework with his children."  "At the same time he was devoted to his aging father, his overburdened mother and his bedridden, disabled brother."  She goes on to recall a time when her mother was stricken with cancer and she had to spend time at the hospital. Joseph made sure that he and his wife were available to watch her children and do whatever was needed to help.
> (See Exhibit 29)

Jules Pogrow states on Mr. Shereshevsky's behalf:

> "It was very, very clear to me that, with regard to their community, Joe and his wife are the beating heart that makes each and every member of that community come so alive, providing friendship and caring that so many seek.  And every single community institution that I visited directly owed their success and existence to their [Joseph and his wife] burning

interest, motivating drive and financial commitment."
(See Exhibit 30)

Mr. Shereshevsky's niece, Ahurah Falk, writes on behalf of her uncle:

"His life was and is a life of giving and giving and more giving. His house is an open house for the homeless, elderly, lonely or anyone stuck on the road. I don't remember ever being at his house with less than 10-extra people who are suffering in some way, seated at his table. This can only come from a total selfless and honorable individual that he is and always was." She further states, "I still remember the days when my mother (his sister) was still alive, he would take off the day and drive his father an hour and a half to our home to enjoy the holiday. Until today, he never missed a day without a phone call to his elderly mother."
(See Exhibit 31)

Chaim Verschleisser, Mr. Shereshevsky's brother-in-law, states:
"Joseph has built a home that clearly demonstrates the values he holds dear and the quality of his character. His home has an open door policy to anyone in need. It is difficult to recall a visit to the Shereshevsky's without finding that other guests are also staying in their home, enjoying their legendary meals and warm hospitality."
(See Exhibit 32)

Mr. Shereshevsky's sister-in-law Yocheved Glaser states:

"When my husband and I opened our restaurant, we made a lot of mistakes and were very unsure of ourselves. Joseph encouraged us to open as scheduled and was there along side of us baking pizzas!" She later goes on to say, "…our one year old son was diagnosed with cancer. We were devastated as well as in terrible debt, with no credit… Joseph was there for us again." "During the two years of intensive chemotherapy, Joseph sent us $1,000 every month and even continued for a third year! Having been in such a terrible emotional state, he truly kept us afloat. He and his wife would even find excuses to buy toys for our other children whenever they could."
(See Exhibit 33)

Rabbi Mendel Epstein, a friend of Mr. Shereshevsky's for eighteen years and sitting judge on the rabbinical court, states:

"He is a pillar of the Jewish community having established a day school named after his father and he has until now a very good reputation in his community."
(See Exhibit 34)

Rabbi Aviel Orenstein states on behalf of Joseph Shereshevsky:

"His devotion to his family and fellow men is far more than exemplary. It is unbounded,

16

Case 1:08-mj-01766-UA    Document 13    Filed 09/02/2008    Page 17 of 20

without expecting anything in return." "He helped my daughter and son-in-law, who have a large family, generously, to purchase a suitable apartment. Love and kindness stream from him."
(See Exhibit 35)

Mr. Philip Schwartz, a friend of Mr. Shereshevsky's for over 10-years states:

"My family itself has been a beneficiary of his kindness, when our air-conditioning unit broke of a weekend during a heat wave and he provided for us to stay with him. In addition, he paid for a new unit when we could not afford it."
(See Exhibit 36)

Mr. Shereshevsky's friend, Mrs. Esther Bridge writes on his behalf:

"Yossi would literally give one in need the shirt off his back." "Many of us were taken aback when Yossi gave $1800 to the Maury High School Band [a non-Jewish organization] when all the Jewish organizations were hurting so badly. He said at the time, 'they are our neighbors.' He made it clear that we cannot turn our backs on our neighbors even when we have dire needs." She continues by saying, "When my husband was dying of cancer, they [Joseph and his wife] were always the first to bring a meal and welcomed words of Torah; without which I couldn't have gotten through it." And lastly states, "…it is worth mentioning that I say these things even though I know my investment with Wextrust may be at risk. I love and support Joseph Shereshevsky and his beautiful family."
(See Exhibit 37)

Becky Belinda Winstead-Roberts, a member of the Orthodox community in Tidewater, states on behalf of her friend Joseph "Yossi" Shereshevsky:

"My return [to Tidewater] was due to a tragic incident in which both of my parents were killed in a house fire." "One of the first families to reach out to us was the Shereshevsky family. Without being asked, the Shereshevsky's GAVE, not loaned, us some money for immediate expenses, they along with Yossi's daughter Ahuva Manela, brought food, visited us, brought computer games to my mother-in-law so my five-year-old son would have some fun computer games at Bubbe's (Yiddish for grandmother) to play with, and repeatedly volunteered further assistance." She further recalls a time, "On one Jewish holiday [when] they [Joseph and his wife] welcomed every child in their synagogue into their home, they provided food, games, treats, and Yossi even [gave] generous prizes for answers to his questions." And continues, "Because of Yossi's continued support of many things in this community, I can confidently state that EVERY single solitary member of this community has benefited from the generosity, kindness, compassion, and sincere desire to help that I have witnessed countless times from Yossi and his family." She concludes by saying, "If everyone who had the means only did a fraction of what Yossi has done, does, and I know will continue to do if afforded the opportunity, then the world would be a much better place."

17

(See Exhibit 38)

Attorney, Joseph A. Miller, a member of the Orthodox Jewish Community of Norfolk, Virginia, and a friend of Joseph Shereshevsky for the past eight years, writes on his behalf:

> "During the time that I have known Mr. Shereshevsky, I have witnessed him engage in countless acts of kindness, support and honor towards the numerous institutions in our Community, as well as those less fortunate in our Community. His home is a warm place, often filled with guests who enjoy his hospitality, including many of the young men who learn in our local Talmudic Academy, or Religious High School. Many of these young men come from out-of-town, and Mr. Shereshevsky and his wife frequently have these boys over for a meal, to provide them with a 'taste of home.'"
> (See Exhibit 39)

Eeta Travis wrote on behalf of Joseph, stating the following:

> "This past summer, however, our relationship with Yossi took on a new dimension. Although we moved to Savannah in 2004, I needed to return to Norfolk for the summer. I had just had a baby, I needed to study for my insurance exam, my husband was out of work for months and I needed a refuge. Yossi really helped me out. He hosted me and my four children for two months. My children destroyed parts of the house, and he dealt with it very graciously."
> (See Exhibit 40)

Rabbi Y. M. Jacobowitz states:

> This past July, my father passed away after a long illness. Yosef was at the house to offer his condolences and helping to set up the house of mourning for "shiva". He did not leave us until everything was taken care of including the organizing, setting up the food and cleaning up of the house the entire week of "shiva".
> (See Exhibit 41)

Mr. and Mrs. Christopher Smith, Petty Officer 2nd Class United States Navy. writes to the Court on behalf of Joseph:

> He became such a part of our life that he and his wife, Elka walked me down the aisle for our Orthodox Jewish wedding that they helped make possible. He has a life here in Norfolk, he has people who depend on him, people who believe in him, and believe in the principals he guides his life by. Since he has been gone, there has been a void in our community and hearts. His home was always an open door for anyone to walk into and grab a bite to eat or just relax for awhile, literally you could go anytime of the day and find the door unlocked with people just visiting his family.
> (See Exhibit 42)

18

Finally, Ahuva Manela, Joseph's daughter, writes in the most profound manner:

> I am employed by Toras Chaim. I teach Judaic studies to second graders.  I know that my father, Joseph Shereshevsky, will fulfill his responsibilities to the court, and that he is not a flight risk. He will never abandon his children and his grandchildren. He loves his family more than anything in the entire world. Our community is the best place to be right now, and he needs to come back. My fathers life is his family and his religion. I am divorced and I am very close to my father. I need him back with me. He is a father figure to my kids.  My kids miss him. He is in middle of teaching my younger son how to hit a baseball. He keeps asking when his grandfather is coming back.
> (See Exhibit 43)

The Court should be aware that the above letters from Joseph's family, friends, and community reflect only a small number of the letters submitted on his behalf.

## **CONCLUSION**

For the foregoing reasons, this Court should grant bail to Mr. Shereshevsky on the conditions we propose, or any others it deems reasonable.


Dated:          New York, New York
                September 1, 2008


                              Respectfully submitted,



                              By: /s/ John C. Meringolo
                              **JOHN C. MERINGOLO, ESQ.** (JM3487)
                              Meringolo & Associates, P.C.
                              116 West 23rd Street, Suite 5100
                              New York, New York 10011
                              Direct No. (347) 599-0992
                              *Attorneys for Defendant Joseph Shereshevsky*


cc:     Christopher Garcia, Assistant United States Attorney
        Virginia Romano, Assistant United States Attorney